UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUENTIN SUTTLES,

    Plaintiff,

v.

CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT, OFFICER RONALD J. AMMERMAN, OFFICER MICHAEL SCHEU and JOHN DOES #1-100.

    Defendants.
_____

**COMPLAINT**

Civ. No.: 1:21-cv-897

## JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3). Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims under state law.

2. The Western District of New York is an appropriate venue under 28 U.S.C. §1391 (b) (2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

3. Plaintiff QUENTIN SUTTLES ("Plaintiff" or "Mr. Suttles") is an individual black male who at all relevant times was a resident of Erie County in the city of Buffalo in New York State.

4. THE CITY OF BUFFALO ("DEFENDANT CITY") is a municipal corporation

1

organized under the laws of the State of New York. At all relevant times, DEFENDANT CITY, acting through the DEFENDANT BUFFALO POLICE DEPARTMENT ("BPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all BPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all BPD personnel.

5. In addition, at all times relevant times, DEFENDANT CITY was responsible for enforcing the rules of the BPD, and for ensuring that the BPD personnel obey all federal and state laws.

6. BPD Officer Ronald J Ammerman ("DEFENDANT AMMERMAN") was, at all relevant times, a white police officer of the BPD, and as such was acting in the capacity of an agent, servant and employee of DEFENDANT CITY. Upon information and belief, at all times relevant hereto, DEFENDANT AMMERMAN was Plaintiff's "arresting officer" and was under the command of the BPD. DEFENDANT AMMERMAN is also sued in his individual capacity.

7. BPD Officer Michael Scheu ("DEFENDANT SCHEU") was, at all relevant times, a white police officer of the BPD, and as such was acting in the capacity of an agent, servant and employee of DEFENDANT CITY. Upon information and belief, at all times relevant hereto, DEFENDANT SCHEU was Plaintiff's "arresting officer" and was under the command of the BPD. DEFENDANT SCHEU is also sued in his individual capacity.

8. All other individual Defendants ("DEFENDANT OFFICERS") including John

Doe #1-100, individuals whose names are currently unknown to Plaintiff, are employees of the BPD, and are sued in their individual capacities.

9. DEFENDANT CITY, BPD, DEFENDANT AMMERMAN, DEFENDANT SCHEU and DEFENDANT OFFICERS are collectively referred to as "DEFENDANTS" as applicable herein.

10. At all times here mentioned DEFENDANTS were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City of Buffalo and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the incident, on June 22, 2020, Plaintiff filed a written Notice of Claim ("Notice") with Corporation Counsel for DEFENDANT CITY.

12. On December 2, 2020, Plaintiff appeared for a hearing pursuant to General Municipal Law Section 50-h.

13. Over 30 days have elapsed since the filing of Notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. On or about May 10, 2020, Plaintiff stopped at the Sunoco gas station on Jefferson Street near South Division in Buffalo, New York. While he was pumping gas, he noticed a Buffalo police vehicle with 2 (two) officers, both of whom were glaring at Plaintiff. The officers continued to eye Plaintiff while he pumped gas and pulled his vehicle out of the gas station parking lot onto Jefferson Street.

15. The same police vehicle, later identified to be occupied by DEFENDANT

3

SCHEU and DEFENDANT AMMERMAN pulled out immediately after Plaintiff but drove past him on the opposite side of Jefferson Street as they were going opposite directions. DEFENDANT SCHEU and DEFENDANT AMMERMAN then took a U-turn on Jefferson Street and followed right behind Plaintiff, targeting him for no apparent legitimate reason.

16. Plaintiff, wondering why he was being targeted by these white police officers, accidentally turned the wrong way onto Eagle Street, a one-way street which he noticed after passing 2 house and started to make a 3-point turn to ensure he was driving in the correct direction.

17. DEFENDANT SCHEU and DEFENDANT AMMERMAN then blocked Plaintiff with their police vehicle and turned their sirens on. Plaintiff, still in the middle of a turn and blocking the street, immediately put his vehicle in park.

18. DEFENDANT SCHEU came to the window of Plaintiff's vehicle where he provided his license and registration. Plaintiff tried to explain that he had turned on the wrong street accidentally, but DEFENDANT SCHEU, without explanation asked Plaintiff to step out of the vehicle.

19. Plaintiff cooperated and got out of his vehicle with his hands up in the air. DEFENDANT SCHEU and DEFENDANT AMMERMAN then searched Plaintiff's vehicle and found nothing.

20. DEFENDANT SCHEU then grabbed Plaintiff's private areas over and over again while his hands were in the air. He kept asking him "is that you". He aggressively grabbed under his buttocks and the area between his buttocks

4

and penis.

21. DEFENDANT SCHEU continued to violently attack Plaintiff's private parts while he felt every blow through his thin sweatpants. Plaintiff was not hiding anything in his sweatpants or private parts which was clear, but DEFENDANT SCHEU was relentless in his violence.

22. Then, DEFENDANT AMMERMAN came around and started punching Plaintiff repeatedly, pushing him to the ground, and choking him.

23. While Plaintiff was on the ground, DEFENDANT SCHEU slammed his knee in Plaintiff's groin area extremely hard, repeatedly.

24. The brutal and violent attack by DEFENDANT AMMERMAN and DEFENDANT SCHEU left Plaintiff with a broken right eye socket and broken shoulder.

25. The attack was captured on video by Plaintiff's girlfriend, Amber Mann pleaded with DEFENDANT AMMERMAN and DEFENDANT SCHEU to stop the unprovoked violence against Plaintiff.

26. Plaintiff was then arrested on trumped up charges, refused medical attention, subject to a strip search, left butt naked on the bench at the holding center while BPD officers conducted a full body cavity search.

27. After hours of explaining how injured Plaintiff was with his right eye closing up and bleeding all over the place, Plaintiff was finally taken to the hospital in handcuffs by DEFENDANT AMMERMAN. Plaintiff was scared to go with him but needed medical attention. As he escorted Plaintiff in the back seat, DEFENDANT AMMERMAN tried to intimidate him, force him to admit he

had drugs, but Plaintiff did not have any.

28. At the hospital, another officer, Officer Jake Giaranno approached threatened him to stay quiet about the earlier attack and take any videos off the internet. At that time, it was clear that DEFENDANT AMMERMAN had learned that there was video of the brutal attack that was posted on the internet already by Plaintiff's girlfriend.

29. Without Plaintiff's consent, x-ray were taken of his lower body which only confirmed that he never had, hidden or ingested any drugs.

30. Plaintiff was falsely charged with tampering with physical evidence and resisting arrest. With his face in contusions and bruises, Plaintiff appeared before Judge Eagan who released him.

31. Due to this brutal attack, Plaintiff has suffered physical and emotional injuries.

## FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force)

32. All previous paragraphs are incorporated herein by reference as though fully set forth.

33. Plaintiff makes a claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

34. The Fourth Amendment does not permit Defendants to use excessive force. The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment.

35. The individual Defendants' use of force against Plaintiff was not reasonable under the circumstances and was excessive.

36. Wherefore, as a direct and proximate result of the actions of Defendants Plaintiff has suffered extensive damages.

## SECOND CAUSE OF ACTION:
### 42 U.S.C. § 1983 (Monell) City of Buffalo, Buffalo Police Department, Defendant Ammerman and Defendant Scheu

37. All previous paragraphs are incorporated herein by reference as though fully set forth.

38. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution. *Monell*, 436 U.S. at 694-95.

39. Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

40. At all times relevant, DEFENDANTS had a duty to properly train, supervise, and discipline their employees and agents.

41. DEFENDANTS breached that duty, in part, by:

   a. Improperly training, authorizing, encouraging or directing officers on proper use of force.
   b. Failing to investigate allegations of excessive force.
   c. Failing to discipline officers for violations of policy related to excessive force.
   d. The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of DEFENDANT AMMERMAN and DEFENDANT SCHEU and the DEFENDANTS' entities' failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting in a deliberate indifference to Plaintiff's constitutional rights.

7

42. This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Plaintiff.

43. DEFENDANTS failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the BPD.

44. The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by Plaintiff.

45. Wherefore, as a direct and proximate cause of the actions of the DEFENDANTS, Plaintiff has suffered extensive damages.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 (Fourth Amendment – Duty to Intervene)**

46. All previous paragraphs are incorporated herein by reference as though fully set forth.

47. Plaintiff brings this claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

48. DEFENDANTS' use of force against Plaintiff was excessive.

49. DEFENDANTS each had a duty to intervene and protect Plaintiff but failed to do so in violation of *Putman v. Gerloff*, 639 F.2d 415 (8th Cir. 1981).

50. Wherefore, as a direct and proximate result of DEFENDANTS' actions, Plaintiff has suffered extensive damages.

**FOURTH CAUSE OF ACTION:**
**Intentional Torts: Assault, Battery, False Arrest, False Imprisonment, Intentional Infliction of Emotional Distress**
**against Individually named Defendants**

8

51. All previous paragraphs are incorporated herein by reference as though fully set forth.

52. All of the individual Defendants named in this Complaint are employees, deputies and/or agents of municipalities.

53. All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

54. The actions of the individual Defendants were willful, malicious and in violation of the known rights of Plaintiff.

55. On May 09, 2020, DEFENDANT AMMERMAN and DEFENDANT SCHEU committed assault and battery upon Plaintiff when they intentionally inflicted bodily harm by kneeing, punching, choking and violently grabbing Plaintiff (and his private parts) violently several times until his eye socket and shoulder was broken.

56. On May 09, 2020, DEFENDANT AMMERMAN and DEFENDANT SCHEU committed assault and battery upon Plaintiff by intentionally inflicting or attempting to inflict bodily harm when they broke his eye socket and shoulder, causing injury and pain.

57. DEFENDANT AMMERMAN and DEFENDANT SCHEU, without probable cause or articulated suspicion, handcuffed and put Plaintiff in their squad car.

58. DEFENDANT AMMERMAN and DEFENDANT SCHEU falsely imprisoned Plaintiff in their squad car. Plaintiff's false imprisonment continued as he was transported to a holding center and jail.

59. At all times, Plaintiff knew he was imprisoned by DEFENDANT AMMERMAN and DEFENDANT SCHEU.

60. The conduct was intentional and done through the assertion of legal authority over Plaintiff.

61. The extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

62. Wherefore, as a direct and proximate cause of these actions, Plaintiff has suffered extensive damages.

### FIFTH CAUSE OF ACTION
**Negligence: Negligent Hiring, Negligent Retention, Negligent Supervision, Negligent Infliction of Emotional Distress Against City of Buffalo, Buffalo Police Department, Defendant Ammerman and Defendant Scheu**

63. All previous paragraphs are incorporated herein by reference as though fully set forth.

64. All of the individual Defendants named in this Complaint are employees, deputies and/or agents of municipalities.

65. All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

66. DEFENDANT City of Buffalo and DEFENDANT BPD owed a duty of care to Plaintiff to exercise reasonable care in hiring, retaining, and supervising its employees.

67. DEFENDANT City of Buffalo and DEFENDANT BPD knew or should have known of DEFENDANT AMMERMAN, and DEFENDANT SCHEU had a dangerous character based on prior complaints and issues of excessive

force violations and/or background checks including psychological evaluations.

68. DEFENDANT City of Buffalo and DEFENDANT BPD breached their duty of care to Plaintiff by failing to properly supervise, provide training, and take remedial measures, such as discharge or reassignment, against their employees to ensure the safety of Plaintiff.

69. DEFENDANTS each owed Plaintiff a duty of care and breached their duty of care.

70. As a result of DEFENDANTS' negligent acts, Plaintiff reasonably feared for his safety and has suffered severe emotional distress.

71. Wherefore, as a direct and proximate cause of the actions of DEFENDANTS, Plaintiff has suffered extensive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Enter an Order declaring the conduct of Defendants unconstitutional;

C. Award Plaintiff compensatory and punitive damages as well as attorneys' fees and costs against Defendants;

D. Enter a permanent injunction requiring Defendant City of Buffalo and the Buffalo Police Department to identify all officers responsible for Plaintiff's damages and take steps to discipline those officers and train all other officers to prevent future misconduct;

E. Grant Plaintiff such other and further relief as may be just and proper under the circumstances.

Dated:  August, 6, 2021  /s/Prathima Reddy
      Buffalo, New York  Prathima Reddy Esq.
The Reddy Law Firm LLC
455 Linwood Avenue
Buffalo, NY 14209
preddy@thereddylaw.com
646-468-4257 (cell)